**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CHAPTER 12 |
| DIXIE FARMS, INC., | : | |
| | : | CASE NO. 09-71040 |
| Debtor | : | |

## CHAPTER 12 PLAN

COMES NOW, Dixie Farms, Inc., Debtor, and proposes the following Plan of Reorganization to all its known creditors.

### ARTICLE I

### DEFINITIONS

The definitions contained in Section 101 of the Bankruptcy Code are incorporated into this Plan except as modified in this Article. The following terms and abbreviations, when used in the Plan shall have, unless the context otherwise requires, the following meanings:

1.1 Allowed Claim: A claim enforceable against the Debtor or property of the Debtor under 11 U.S.C. § 502 or a claim, interest, or request for payment allowed or awarded under 11 U.S.C. §§ 502, 503, 505, 506 and/or 507 of the Bankruptcy Code.

1.2 Allowed Priority Claim: An allowed claim against the Debtor, which is enforceable against the Debtor or enforceable against property of the Debtor under § 507 of the United States Bankruptcy Code.

1.3 Allowed Secured Claim: The amount of each allowed claim against the Debtor which is equal to the amount stipulated as constituting the allowed secured claim between the Debtor and the holder of such claim, or the lesser of: (1) the total amount of the indebtedness owed by the Debtor to the holder of such claim; and (2) the value of any property of the estate with

respect to which such creditor holds a security interest not avoidable by the Debtor, to the extent provided under 11 U.S.C. § 506.

1.4     Allowed Unsecured Claim:  Allowed unsecured claim means all allowed claims against the Debtor which are not allowed secured claims or allowed priority claims, including, but not limited to, claims of creditors who have supplied goods or services to the Debtor, creditors with claims arising from the rejection of executory contracts, and creditors with deficiency claims.

1.5     Assets:  All the assets of the estate of the Debtor, including, but not limited to, causes of action of the Debtor or Debtor-in-Possession based on bankruptcy law, non-bankruptcy law, or equity.

1.6     Chapter 12:  Chapter 12 of the United States Bankruptcy Code.

1.7     Chapter 12 Case:  Chapter 12 Case shall mean the case for reorganization of the Debtor commenced by a voluntary petition under Chapter 12 of the Bankruptcy Code on July 2, 2009, now pending in this Court and styled In re:  Dixie Farms, Inc., Case No. 09-71040.

1.8     Confirmation:  Confirmation means the entry by the Court of any Order confirming the Plan in accordance with Chapter 12 of the Bankruptcy Code.

1.9     Court:  Court means the United States Bankruptcy Court for the Middle District of Georgia, Columbus Division, acting in this case and/or the United States District Court for the Middle District of Georgia.

1.10    Debtor and Debtor-in-Possession:  Flowers Brothers Farms, LLC.

1.11    Deficiency Claim:  The extent to which any holder of an allowed claim is owed an allowed unsecured claim above the amount of its allowed secured claim after treatment of such allowed secured claim as provided in this Plan, to the extent as provided in 11 U.S.C. § 506, or the amount by which the holder of an allowed secured claim is owed amounts by the Debtor after

repossession, foreclosure, and sale of collateral, to the extent such claim is enforceable against the Debtor under applicable non-bankruptcy law.

1.12    Effective Date:  Effective date for purposes of this Plan means the date the Order confirming this Plan becomes final and non-appealable with no appeal pending, or if an appeal is filed, the date on which the Order affirming confirmation becomes non-appealable.

1.13    Harris Farm:  Harris Farm means the 174-acre farm on William Gibbs Road in Tift County, Georgia.

1.14    Post-confirmation:  Post-confirmation means the period of time after confirmation.

1.15    Post-petition: Post-petition means any date on or after July 2, 2009, through confirmation.

1.16    Poulan Farm:  Poulan Farm means the 314-acre farm in Tift County, Georgia.

1.17    Poulan House:  Poulan House means the house and 8 acres in Tift County, Georgia.

1.18    Pre-petition:   Pre-petition means that period of time preceding July 2, 2009.

1.19    Schedules:  Schedules shall refer to the schedules of assets and liabilities filed in the bankruptcy case by Debtor.

1.20    Trustee:  Trustee shall refer to Walter W. Kelley, or such other duly authorized and appointed Chapter 12 trustee of Debtor.

## ARTICLE II

### CLASSIFICATION OF CLAIMS AND INTEREST

2.1    Class 1 shall consist of allowed priority claims for post-petition and post-confirmation fees and expenses of administration for professional persons retained pursuant to

orders of the Court for which applications for allowance of administrative expense claims are filed, and as the same are allowed by the Court under Section 503(b) of the Bankruptcy Code.

2.2     Class 2 shall consist of allowed priority claims for post-petition transactions and debts arising in the normal course of business of Debtor allowed under Section 503(b) of the Bankruptcy Code, and allowed priority claims of the trustee.

2.3     Class 3 shall consist of allowed priority claims not included in Classes 1 and 2.

2.4     Class 4 shall consist of any allowed secured claim held by Ameris Bank collateralized by a first lien on the Poulan House.

2.5     Class 5 shall consist of any allowed secured claim held by Colony Bank collateralized by a first lien on the Poulan Farm.

2.6     Class 6 shall consist of any allowed secured claim held by Tifton Banking Company collateralized by a first lien on the Harris Farm.

2.7     Class 7 shall consist of any allowed secured claim held by Ty Ty Peanut collateralized by a second lien on the Harris Farm, Poulan Farm and Poulan House.

2.8     Class 8 shall consist of the allowed secured claims, if any, of creditors holding judgment or other non-consensual liens.

2.9     Class 9 shall consist of all allowed unsecured non-priority claims against the Debtor.

2.10    Class 10 shall consist of the interest of the Debtor's shareholders.

## ARTICLE III

### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.1     Claims in Class 1 (administrative professional) shall be paid in cash in full, when awarded by the Court, or in such other manner as each member of said class shall agree in writing, when awarded by the Court.

3.2	Claims in Class 2 (administrative expense – non professional), to the extent allowed, shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.3	Claims in Class 3 (new administrative priority), to the extent allowed, shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.4	The claim in Class 4 (Ameris Bank), to the extent allowed, shall be settled and satisfied as follows:  Class 4 creditors shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.5	The claims in Class 5 (Colony Bank), if any and to the extent allowed, shall be settled and satisfied as follows:  Class 5 creditors shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.6	The claims in Class 6 (Tifton Banking Company), if any and to the extent allowed, shall be settled and satisfied as follows:  Class 6 creditors shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.7	The claims in Class 7 (Ty Ty Peanut), if any and to the extent allowed, shall be settled and satisfied as follows:  Class 7 creditors shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.8	The claims in Class 8 (non-consensual liens), if any and to the extent allowed, shall be settled and satisfied as follows:  Class 8 creditors shall be paid from the liquidation of assets as provided in Section 4.3 of this plan.

3.9	The claims in Class 9 (general unsecured without priority), to the extent allowed, shall be settled and satisfied by payment from the liquidation of assets as provided in Section 4.3 of this plan.

3.10	The Debtor's shareholders shall retain their Class 10 ownership interest.

## ARTICLE IV

## SOURCE OF PLAN PAYMENTS AND METHOD OF PAYMENT

4.1        All payments due under this Plan shall be made from the operation of the Debtor's business and/or the liquidation of his assets, or from loans or gifts to the Debtor.

4.2        All payments to any class that is not either paid in full on the effective date or paid in accordance with the pre-petition loan documents will be made by the Debtor directly to the trustee on the date by cashier's check or certified funds.  Commission payments to the trustee, to the extent payable under law, shall be made concurrently with the Debtor's payments.

4.3        Debtor shall liquidate the Harris Farm, Poulan Farm and Poulan House by public auction, with no further court approval necessary.  Proceeds of sale, after deducting sale expenses, shall be paid to secured creditors, as their interests appear.  Any surplus proceeds after paying secured claims shall be disbursed to unsecured creditors in accordance with 11 U.S.C. § 507.  Secured creditors shall retain any rights to credit bid at the auction.

## ARTICLE V

## REJECTION OF EXECUTORY CONTRACTS

5.1        All executory contracts and leases shall be rejected unless assumed or prior to confirmation, or unless a motion to assume is filed by Debtor prior to confirmation.

## ARTICLE VI

## EVENTS OF DEFAULT

6.1        The occurrence of any of the following shall constitute an event of default:

   (a)     the failure by the Debtor to make the payments as provided for in this Plan; and

   (b)     the failure by the Debtor to comply with any covenant or agreement set forth in the Plan.

## ARTICLE VII

## OPERATION OF BUSINESS AND EFFECT OF CONFIRMATION

7.1	The Debtor shall be the Debtor-in-Possession with full and complete power to conduct the farming operation, control, and possession of his property and assets, and the Debtor shall retain all rights and powers provided by 11 U.S.C. § 1203 until the closing of the case. After confirmation, the Debtor may employ Katz, Flatau & Boyer, L.L.P. as required by legal counsel. The Debtor shall prepare and file all necessary tax returns, and the trustee shall have no responsibility for preparation of tax returns.

7.2	The effect of confirmation shall be in accordance with 11 U.S.C. § 1227. Title to the Debtor's property shall revest in the Debtor upon confirmation of the Plan, subject to any liens retained by creditors hereunder. Holders of allowed secured claim shall retain their liens up to the fair market value of its collateral securing said claims, subject to the provisions of the Plan. For purposes of this Plan, fair market value shall be as set forth in the Plan, unless otherwise provided by agreement or Court Order.

7.3	Upon payment of the amount provided by the Plan for any allowed secured claim, the lien upon the Debtor's property securing said claim shall be canceled, and any creditor holding a lien shall execute all documents as are necessary to cancel such lien.

7.4	The Order of confirmation shall constitute a judgment avoiding any lien, consensual or otherwise, whether by way of security deed, trust deed, mortgage, security agreement, judgment, operation of statute, or otherwise to the extent that the lien does not attach to value in collateral, as such value is set out in this Plan or otherwise determined by the Court.

## ARTICLE VIII

## CLOSING OF THE CASE AND DISCHARGE

8.1     The case may be closed within three years and upon full satisfaction of all Debtor's obligations under Section 3.7 of this plan.  Prior to closing, the Debtor shall have an accounting to the trustee for payments in accordance with the Plan.  The Debtor shall be discharged from pre-petition claims, except to the extent this Plan provides for treatment of such claims thereafter.  The closing of the case shall terminate the bankruptcy estate and the services of the trustee.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1     Until all claims and disputes have been allowed and resolved, this Court will retain jurisdiction for, including but not limited to the following purposes:

  a.) the classification of any claim of any creditor and the re-examination of claims which have been allowed, and determination of objections as are filed to creditor's claims;

  b.) termination of all questions and disputes regarding title to, security interests in, liens against, assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of confirmation, between the Debtor or Debtor-in-Possession and any other party (including creditors of Debtor dealt with under this Plan), including but not limited to, any right of the Debtor to recover assets or money pursuant to the provisions of the United States Bankruptcy Code or applicable non-bankruptcy law;

  c.) the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order for confirmation as may be necessary to carry out the purpose and intent of this Plan;

  d.) the modification of this Plan after confirmation at any time after confirmation;

e.)   to enforce and interpret the terms and conditions of this Plan;

f.)   entry of any Order, including injunctions, necessary to enforce the title, rights, and titles of the Debtor or Debtor-in-Possession;

g.)   entry of an Order including and terminating this case.

9.2   Notwithstanding any of the provisions of the Plan specifying a date or time for the payment or distribution of consideration hereunder, payments and distributions by the Debtor or trustee in respect of any claim which at such date or time is disputed, unliquidated, or contingent shall not be made until such claim or interest becomes an allowed claim.

9.3   The Debtor may propose amendments or modifications to this Plan at any time prior to or subsequent to confirmation, pursuant to the United States Bankruptcy Code and applicable bankruptcy procedure, or if the filed claims by creditors are materially different from the claims reflected on the Debtor's schedules.

9.4   The Debtor may prepay any obligations under the Plan without penalty or charge of unaccrued interest.

9.5   The debtor and trustee expressly preserve any and all claims, objections, defenses, set-offs, counterclaims, or the like which the debtor may have had or may have against the holder of any claim or arising out of or related to any claim, and any and all such claims, objections, defenses, set-offs, counterclaims, or the like of the debtor shall survive confirmation and consummation of the Plan.

ARTICLE X

LIQUIDATION ANALYSIS

10.1   In the event the instant case had been a case under Chapter 7, the holders of unsecured claims would not receive a dividend. Debtor's schedules show total assets of

$2,410,000.00 and secured claims of $2,506,500.00. Therefore, there is no equity available for unsecured creditors. Because debts of affiliated entities are cross-collateralized, when all of affiliates are liquidated, there may be equity for creditors.

## ARTICLE XI

## FEASIBILITY ANALYSIS

The Plan provides for payment to secured claimants from an orderly liquidation of assets with any surplus to unsecured creditors. Since this plan calls for an orderly liquidation, it is feasible.

WHEREFORE, Dixie Farms, Inc., Debtor, respectfully requests that the Plan of Reorganization filed herein be confirmed.

KATZ, FLATAU & BOYER, L.L.P.
By:

*/s/Wesley J. Boyer*_____
WESLEY J. BOYER
State Bar No. 073126
Attorney for Debtor
355 Cotton Avenue
Macon, Georgia 31201
(478) 742-6481

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the

CHAPTER 12 PLAN

upon the following:

Walter W. Kelley, Esq.
Post Office Box 70849
Albany GA 31708

via electronic delivery this 30th day of September, 2009.


/s/Wesley J. Boyer_____
WESLEY J. BOYER