## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

IN RE:        :      **CHAPTER 12 BANKRUPTCY**
       :
**DIXIE FARMS, INC.,**        :      **CASE NO. 09-71040 - JTL**
       :
       **Debtor.**        :

---

**COLONY BANK OF WORTH,**        :
       :
       **Movant,**        :
       :
       :      **CONTESTED MATTER**
**vs.**        :
       :
**DIXIE FARMS, INC. and**        :
**WALTER KELLEY**        :
       :
       **Respondents.**        :

---

## COLONY BANK OF WORTH'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, Colony Bank of Worth (hereinafter "Colony Bank"), and files this its *Colony Bank of Worth's Motion for Relief from the Automatic Stay* and in support thereof shows the following:

### I. ALLEGATIONS OF JURISDICTION

1.

On or about July 2, 2009, Dixie Farms, Inc., Debtor herein, filed its Voluntary Petition for relief pursuant to Chapter 12 of the United States Bankruptcy Code.

2.

Shortly thereafter, Walter Kelley was duly appointed as Chapter 12 Trustee over the case pursuant to 11 U.S.C. § 1202.

3.

Jurisdiction over this matter and over the Respondents is proper in the United States District Court for the Middle District of Georgia, Valdosta Division, pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 1227, and 11 U.S.C. § 362(d).

4.

Venue over this matter is proper in the United States District Court for the Middle District of Georgia, Valdosta Division, pursuant to 28 U.S.C. § 1409.

5.

This motion is a contested matter pursuant to Bankruptcy Rule 9014 and Bankruptcy Rule 4001(a).

6.

This contested matter constitutes a core proceeding that may be heard and determined by the Bankruptcy Judge presiding over the Bankruptcy Court Unit of the United States District Court for the Middle District of Georgia, Valdosta Division, pursuant to 28 U.S.C. § 157(a)(1), 28 U.S.C. § 157(b)(2)(A) and 28 U.S.C. § 157(b)(2)(G).

## II. ALLEGATIONS OF MOVANT'S CLAIMS

7.

The allegations of Paragraphs 1 through 6 are hereby incorporated as if fully restated.

8.

On or about September 11, 2006, for value received, Debtor granted to Colony Bank a Deed to Secure Debt (hereinafter "Deed to Secure Debt") in specifically referenced real properties comprising of farm lands lying in Worth County, Georgia (hereinafter the "Property"). The Deed to Secure Debt was provided as security for obligations arising out of Debtor's guaranty of the obligations of Flowers Brothers Produce Company, LLC (hereinafter "Flowers") to Colony Bank. Pursuant to the express terms of the Deed to Secure Debt, the interest granted thereby serves as security for all indebtedness then or thereafter to be owing by the Debtor to Colony Bank. A true and correct copy of the Deed to Secure Debt is attached hereto as Exhibit "1."

9.

Colony Bank properly perfected its interests arising under the Deed to Secure Debt by properly recording the Deed to Secure Debt in the office of the Clerk of the Superior Court of Worth County, Georgia on September 15, 2006, as evidenced by Exhibit "1."

10.

On or about October 5, 2007, Flowers entered into and executed a promissory note (hereinafter "Note 1") in favor of Colony Bank in the principal amount of $404,903.00. The terms of Note 1 provide that the note is payable on demand, but absent demand payment is required as follows: four (4) annual payments of $62,673.64 each, with the first of such payments coming due on October 5, 2008; and one (1) payment of $305,182.46 coming due on October 5, 2012. A true and correct copy of Note 1 is attached hereto as Exhibit "2."

11.

On October 5, 2007, Debtor entered into a Guaranty agreement (hereinafter "Guaranty 1") with Colony Bank whereby Debtor guarantied the payment and performance of all obligations of Flowers to Colony Bank. Pursuant to Guaranty 1, Debtor guarantied the payment of not only Note 1, but also all other liabilities, debts, and obligations of Flowers Brothers to Colony Bank. The terms of Guaranty 1 expressly provide that the obligations of Debtor pursuant to Guaranty 1 are secured by the Deed to Secure Debt. A true and correct copy of Guaranty 1 is attached hereto as Exhibit "3."

12.

On March 26, 2008, Flowers entered into and executed a promissory note (hereinafter "Note 2") in favor of Colony Bank in the principal amount of $285,000.00. The terms of Note 2 provide that the note is payable upon demand, but absent demand, payment is required as follows: one (1) payment of $289,797.50, with such payment coming due on July 5, 2008. A true and correct copy of Note 2 is attached hereto as Exhibit "4."

13.

On March 26, 2008, Debtor entered into a Guaranty agreement (hereinafter "Guaranty 2") with Colony Bank whereby Debtor guarantied the payment and performance of all obligations of Flowers to Colony Bank. Pursuant to Guaranty 2, Debtor guarantied the payment of not only Note 2, but also all other liabilities, debts, and obligations of Flowers Brothers to Colony Bank. The terms of Guaranty 2 expressly provide that the obligations of Debtor pursuant to Guaranty 2 are secured by the Deed to Secure Debt. A true and correct copy of Guaranty 2 is attached hereto as Exhibit "5."

14.

On August 13, 2008, Flowers and Colony Bank entered into a Modification of Promissory

Note agreement whereby the terms of Note 2 were modified to extend the maturity date of Note 2 from July 5, 2008 to October 5, 2008. A true and correct copy of the Modification of Promissory Note agreement is attached hereto as Exhibit "6."

15.

Flowers defaulted under the terms of Note 1 and Note 2 by failing to perform the payment obligations required by the Notes. Debtor, as well as any and all other guarantors of the obligations of Flowers to Colony Bank, subsequently failed to perform the payment obligations of Flowers to Colony Bank. On June 2, 2009, as permitted by the express terms of Note 1 and Note 2, Colony Bank declared immediately due and payable the accelerated balance of all remaining principal, accrued interest, and accrued charges under Note 1 and Note 2.

16.

Prior to the filing of the Debtor's petition for relief in the instant bankruptcy case, and as a remedy for Debtor's breach of its obligations under Guaranty 1 and Guaranty 2, Colony commenced foreclosure proceedings as to the Property. The filing of the instant bankruptcy case stayed Colony Bank's foreclosure of the Property.

17.

As of the date of the filing of the Debtor's petition for relief, Debtor was indebted to Colony Bank in an amount more than $760,000.00.

### III. REQUEST FOR RELIEF FROM THE AUTOMATIC STAY

18.

The allegations of Paragraphs 1 through 17 are hereby incorporated as if fully restated.

19.

On or about January 12, 2010, this Court entered an Order confirming Debtor's Chapter 12 Plan. The Order required Debtor to sell at auction the Property on or before March 15, 2010. Debtor defaulted in the terms of his Confirmed Plan by failing to auction the Property within the time required by the Order confirming the Plan.

20.

Pursuant to 11 U.S.C. § 362(d)(1), Debtor's default in a term of a Confirmed Plan constitutes cause for this Court to grant Colony Bank relief from the automatic stay.

WHEREFORE, Colony Bank prays that this Court (a) inquire into and grant the instant Motion; (b) enter an Order granting Colony Bank relief from the automatic stay as to the Property so that Colony Bank may exercise its remedies otherwise available pursuant to applicable state and federal law; and (c) provide to Colony Bank such other relief as is equitable and proper.

RESPECTFULLY SUBMITTED, this 17th day of March, 2010.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

BY:     **s/ David A. Garland**
          Georgia State Bar No.:  005680
          e-mail: dgarland@mcdr-law.com

BY:     **s/ R. Lee Brown, Jr.**
          Georgia State Bar No.: 100408
          Attorneys for Movant Colony Bank of Worth
          2829 Old Dawson Road
          Post Office Drawer 71727
          Albany, Georgia  31708-1727
          Telephone:     (229) 888-3338
          Facsimile:      (229) 888-1191
          E-mail: lbrown@mcdr-law.com



**EXHIBIT**

"1"

02919

BOOK **0730** PAGE **0037**





2006 SEP 15 AM 11:01

*Susan McCard*
*DP*

Commercial and Industrial
Real Estate Loans

After Recording Return To:
**REINHARDT, WHITLEY, WILMOT,**
**SUMMERLIN & PITTMAN, P.C.**
P. O. Drawer 1287
Tifton, GA 31793

## DEED TO SECURE DEBT

STATE OF GEORGIA
COUNTY OF WORTH

THIS INDENTURE, made this 11th day of September, 2006, between DIXIE FARMS, INC., a Georgia corporation with offices in the State of Georgia and County of Tift, Grantor, and COLONY BANK, a banking corporation with offices in the State of Georgia and County of Worth, Grantee, whose mailing address is 601 North Main Street, Sylvester, Georgia 31791.

WITNESSETH: That, Whereas, FLOWERS BROTHERS PRODUCE COMPANY, LLC is justly indebted to Grantee in the sum of Four Hundred One Thousand Five Hundred Twenty Eight Dollars ($401,528.00), in lawful money of the United States, with interest thereon, according to the terms of a certain note (the "Note") given by FLOWERS BROTHERS PRODUCE COMPANY, LLC to Grantee, and bearing even date herewith, with final payment being due on September 11, 2007, the Note, by reference, being made a part hereof. Grantor has by separate instrument of even date herewith guaranteed the obligations of FLOWERS BROTHERS PRODUCE COMPANY, LLC under the Note and as security for such guaranty, Grantor hereby makes this instrument.

NOW, Therefore, in consideration of the premises and of the sum hereinabove set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee the following property, to-wit:

Tract 1: All that tract or parcel of land situate lying and being in original Land Lot No. 261 in the 7th Land District of Worth County, Georgia, more particularly described as follows: Commencing at a point on the north original land line of Lot No. 261 in the 7th Land District of Worth County, Georgia, 2134 feet east of the northwest corner of said lot, and running east on the original land line 1637 feet to a stake; thence south 2452 feet to a stake at the northeast corner of a twelve acre tract formerly owned by Eugene Jackson; and thence west along the north line of said twelve acre tract, formerly owned by Eugene Jackson, to the east line of one hundred acre tract formerly owned by Gordon S. Sumner, and owned by M. E. Cooley; thence north along the Sumner-Cooley east line to the northeast corner of the Sumner-Cooley one hundred acres tract; thence west along the north line of the Sumner-Cooley one hundred acre tract to the public road; thence in a northwesterly direction along the east side of the public road to the original north line of said lot 261; thence east along the original north line of said lot to starting point. Said tract containing one hundred and two (102) acres, more or less, of lot of Land No. 261 in the 7th Land District, Worth County, Georgia, designated as the Bank of Poulan Tract according to a certain survey and map prepared by C. M. Medders in September, 1928.

Tract 2: All that tract or parcel of land situate, lying and being in the County of Worth as follows: part of Land No. 261 in the 7th Land District of Worth County, Georgia, beginning at a point on the original west line of said lot which is 28.26 chains N. 1 degree west of the original southwest corner of said lot and run north 88-3/4 degrees east 44.39 chains, thence north 3/4 degrees west 22.90 chains south 88-1/2 degrees west 44.54 chains to original west line of said lot, thence south 1 degree east on said west original line 22.80 chains to place of beginning. Containing 112-1/2 acres according to survey and plat thereof made by C. M. Medders, County Surveyor, December 8, 1921.

Tract 3: All that tract or parcel of land lying and being in the County of Worth, State of Georgia, to-wit: Thirty-four and one-half (34-1/2) acres, more or less, of lot of Land No. 261 in the 7th Land District of Worth County, Georgia, described as follows: Beginning at the northeast corner of lot of Land No. 261 said lot being in the 7th Land District of Worth County, Georgia, thence with the land line between Lot Nos. 260 and 261, south 1 degree east 2450 feet, more or less to the tract formerly owned by Millie Harris, thence west 229 feet, more or less, to a corner common to George Marlin and M. C. Phaul, thence north 2450 feet, more or less, to a point on the north line of said Lot No. 261, thence east along said line between Lot Nos. 260 and 261, 598 feet, more or less, to the starting point, designated as the J. G. McPhaul tract according to a certain survey and map prepared by C. M. Medders in September, 1928.

Tract 4: All that tract or parcel of land situate, lying and being in the County of Worth, State of Georgia, as follows: Twenty-nine (29) acres of land, more or less, off of lot of Land No. 261 in the 7th Land District of Worth County, Georgia. Beginning on the northwest corner of said lot number 261 and running south on the original west line 411 yards; thence running east 506 yards to a certain public road; thence running along the center of said public road in the northwesterly direction to the original north line of said lot; thence west 191 yards along said original land line to point of beginning, designated as the Tift County Tract according to a certain survey and map prepared by C. M. Medders in September, 1928.

**Tract 5:** All that tract or parcel of land situate, lying and being in the County of Worth, State of Georgia, as follows: Twelve (12) acres as follows: Beginning at the northwest corner of a fifty acre tract formerly owned by J. D. Bridges, and W. L. Bridges and running east to a corner of a ten acre tract formerly owned by Millie Harris; thence north along Millie Harris' line far enough to make twelve (12) acres; thence west to the line of a tract formerly owned by W. A. Dupree and M. E. Cooley; thence south with the Dupree-Cooley line to a starting point. Said land lying and being in Lot 261 in the 7th District of Worth County, Georgia, designated as the Jackson tract, according to a certain survey and map prepared by C. M. Medders in September, 1928.

**Tract 6:** All that tract or parcel of land situate, lying and being in the County of Worth, State of Georgia, as follows: Beginning at the corner of a fifty acre tract of land sold by J. G. McPhaul to S. S. Lesure, and later sold to W. L. Bridges and running north on the original land line 220 yards, thence west 220 yards, thence south 220 yards to the line formerly owned by W. L. Bridges, thence east along the north line of W. L. Bridges fifty acre tract to the original land line and the beginning point. Said tract of land lying and being in Lot 261 in the 7th Land District of Worth County, Georgia, and containing ten (10) acres, designated as the Harris tract according to a certain survey and map prepared by C. M. Medders in September, 1928.

All the above tracts of land being contiguous and forming one body of land, containing 300 acres, more or less, and being the same land conveyed to O. C. Flowers by deed dated January 26, 1951, and recorded in Office of Clerk of Superior Court, Worth County, Georgia, in Deed Book 88, Pages 377-378. Excepted however from the above described tract is that certain tract or parcel of land situate, lying and being in Land Lot 261, 7th Land District, Worth County, Georgia, containing 7.82 acres, said tract being more particularly described by plat of survey made by E. J. Conoly, Registered Land Surveyor, dated May 28, 1969, which plat, recorded in the office of Clerk of Superior Court, Worth County, Georgia in Plat Book 15, page 6, is by referenced incorporated herein.

TOGETHER with all buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

TOGETHER with all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or under or above the same or any part or parcel thereof; and

TOGETHER with all and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; and

TOGETHER with all machinery, apparatus, equipment, fittings and fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, and articles of personal property of every kind and nature whatsoever (hereinafter collectively called "equipment"), now or hereafter located in, upon or under said property or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor including but without limiting the generality of the foregoing, all heating, air conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers, ranges, furnaces, oil burners or units thereof; appliances; air-cooling and air-conditioning apparatus; vacuuming cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; attached cabinets; partitions; ducts and compressors; rugs and carpets; draperies; furniture and furnishings; together with all additions thereto and replacements thereof (grantor hereby agreeing with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be requested by grantor to confirm the conveyance, transfer and assignment of any of the foregoing); and

TOGETHER with any and all rents which are now due or may hereafter become due by reason of the renting, leasing and bailment of property improvements thereon and Equipment; and

TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the premises, to the extent of all amounts which may be secured by this deed at the date of receipt of any such award or payment by Grantee and of the reasonable attorney's fees, costs and disbursements incurred by Grantee in connection with the collection of each award or payment.

TO HAVE AND TO HOLD the said premises hereby granted (all of which are collectively referred to herein as the "Premises") to the use, benefit and behoof of the Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and that Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage; and is made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note in accordance with the terms thereof, together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, however incurred, including advances by the grantee or any transferee for the purposes of paying taxes or premiums on insurance on the premises or to repair, maintain or improve the premises (whether or not the grantor is at that time the owner of the premises) and all renewal or renewals, and extension or extensions and modification or modifications and consolidation or consolidations of the Note or other indebtedness, either in whole or in part (all of which are collectively referred to herein as the "Secured Indebtedness").

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note and this deed provided.

2. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed or made against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items. Upon notification from Grantee, Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby, on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the day on which they become past due. In so event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment of application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and shall become part of the Secured Indebtedness and bear interest at the rate of interest stated in the Note from date of advancement. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it. In the event of the passage, after the date of this instrument, of any law or ordinance of the United States, the State or any political subdivision thereof, wherein the Premises are situated, or any decision by a court of competent jurisdiction, creating or providing for any tax, assessment or charge against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby, that is to be paid by Grantee, the Secured Indebtedness shall, at the option of Grantee, become immediately due and payable and, in the event payment thereof is not made forthwith, Grantee may take, or cause to be taken, such action or proceeding as may be taken hereunder in the case of any other default in the payment of the Indebtedness.

3. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of full insurable value, and (unless waived by Grantee) rental or business interruption insurance against any abatement of rent resulting from fire or other casualty in an amount approved by Grantee; all insurance herein provided for shall be in form and companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by

Grantee, pursuant to the New York Standard or oth_____ mortgagee clause satisfactory to Grantee. If Grantee, by r_____ of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than 10 days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all rights of Grantor, including any right to unexpired premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by this deed, pursuant to the provisions of this Article.

4. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 7 herein. No part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvements, Equipment or other property, now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

5. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interests of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the premises, (b) consent to the cancellation or surrender of any lease of the premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of the Grantor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), in proof of due service of copy of said assignment on each lessee, either personally or by pre-paid registered mail, return receipt requested.

6. Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments and renewals and substitution notes, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this deed and extentions or modifications thereof. Grantor, upon request, made either personally or by mail, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7. Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Grantor shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alteration, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purposes or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon at the rate stated in the Note, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and 15% of the aggregate amount due, as attorney's fees, plus costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

8. Grantor shall deliver to Grantee, at any time within thirty (30) days after notice and demand by Grantee but not more frequently than once in every twelve (12) months period, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by the Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the premises, (b) the operation of the premises, (c) the leases relating to the premises or any part thereof, for the last twelve (12) months calendar period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement.

9. Upon the occurrence of any one of the following events (herein called an "event of default"):

(a) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(b) should any warranty of Grantor herein contained, or contained in any instrument, transfer, conveyance, assignment or loan agreement given with respect to the Premises be untrue or misleading in any material aspect;

(c) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished except as provided for in Article 7 herein;

(d) should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(e) should any claim of priority to this deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(f) should Grantor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust be terminated or expire;

(g) should the Grantor make an assignment for the benefit of creditors, file or have filed against Grantor a Petition for Relief under any chapter of the Bankruptcy Code, or should any custodian, receiver, or trustee be appointed for it or any part of its assets, or any proceeding under any Bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, be commenced by or against Grantor;

(h) should Grantor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this deed, or in the Note, or in any of the following instruments given with respect to the secured indebtedness: loan commitment of Grantee, construction loan agreement between Grantor and Grantee, or assignment of leases by Grantor; or

(i) should any event occur under any instrument, deed or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party; then and there upon Grantee may do any one or more of the following:

(i) enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

(ii) pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any event of default other than payment of interest of principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest stated in the Note, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;

(iii) declare the entire Secured Indebtedness immediately due, payable and collectible, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable and collectible; and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises are or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks in a newspaper in which sheriff's advertisements are published in said county and giving such other notice required by law, and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantor, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns agent and attorney in fact to make such recitals, sale and conveyance, and all of the acts of such attorney in fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, courtesy and all other exceptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving

therefrom all unpaid Secured Indebtedness with in____, then due thereon, and all amounts advanced by Granto___.axes, assessments, fire insurance premiums and other charges, with interest at the rate stated in the Note per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorney's fee, and pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency) and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantor, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity.

Grantee, in any action to foreclose this deed, or upon any event of default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises or both without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full.

10. The Grantor hereby waives and renounces all homestead and exemption rights provided for by the Constitution and laws of the United States or the State of Georgia, in and to the Premises as against the collection of the secured indebtedness, or any part thereof; and Grantor agrees that where, by the terms of the conveyance or the note secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

11. If all or any part of the Premises is sold, conveyed or otherwise transferred without obtaining the prior written consent of Grantee, Grantee may declare the entire Secured Indebtedness immediately due and payable except as prohibited by law. Grantee may, in its sole discretion, consent to such sale or transfer. Should Grantee decide to consent to such sale or transfer it will be deemed to have waived its right to accelerate the Secured Indebtedness only if prior to such sale or transfer (a) Grantee determines that the credit of any purchaser or transferee is satisfactory; (b) the purchaser or transferee agrees to pay interest on the amount owed to Grantee under the Note and under this Deed to Secure Debt at whatever rate Grantee requires; (c) the purchaser or transferee executes an assumption agreement that is acceptable to Grantee and that obligates the purchaser or transferee to keep all of the promises and agreements made in the Note and in this Deed to Secure Debt whether according to their original terms or as amended pursuant to the assumption agreement; and (d) the purchaser or transferee pays the transfer fee required by Grantee. The foregoing provisions will apply to each and every sale and transfer whether or not the Grantee has consented to any previous sale or transfer.

12. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against the Grantor, including an action of foreclosure, or any other action, for a default or defaults by Grantor existing at the time such earlier action was commenced.

13. The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcements of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14. Every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his, their or its address last known to Grantor or (b) addressed to the street address of the Premises hereby conveyed.

15. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement, obligation and secured indebtedness of the Grantor shall be and mean the several as well as joint undertaking of each of them.

IN WITNESS WHEREOF, this deed has been duly executed and sealed by Grantor the day and year first above written.

DIXIE FARMS, INC.

BY: _____

ATTEST: _____

[SEAL]

Signed, sealed and delivered
on this ____ day of _____
2006 in the presence of:

_____
Common Witness

_____
Notary Public

My Commission Expires:

THE DEBT WHICH THIS INSTRUMENT WAS GIVEN TO SECURE HAVING BEEN PAID IN FULL, THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF THE SUPERIOR COURT OF _____ COUNTY, GEORGIA, IS HEREBY AUTHORIZED AND DIRECTED TO MARK IT SATISFIED OF RECORD.

THIS _____ day of _____, _____.

_____

_____

FOR VALUE RECEIVED THE UNDERSIGNED HEREBY TRANSFERS, ASSIGNS AND CONVEYS TO _____ THE INDEBTEDNESS (WITHOUT RECOURSE) SECURED BY THE FOREGOING DEED: THE PROPERTY DESCRIBED IN THE FOREGOING DEED: AND ALL RIGHTS, PRIVILEGES AND POWERS OF THE UNDERSIGNED IN OR UNDER SAID NOTE, PROPERTY, AND DEED.

WITNESS THE SEAL AND SIGNATURE OF THE UNDERSIGNED, THIS _____ DAY OF _____,
_____.

X _____ (SEAL)

X _____ (SEAL)

Signed, sealed and delivered
on this _____ day of _____,
_____ in the presence of:

_____
Common Witness

_____
Notary Public
My Commission Expires:_____



CAH

| | | |
|---|---|---|
| FLOWERS BROTHERS PRODUCE COMPANY LLC<br>P.O. BOX 210<br>TY TY, GA 31795 | COLONY BANK OF TIFT AN OFFICE OF COLONY<br>BANK OF WORTH<br>605 WEST 2ND STREET<br>P O BOX 2459<br>TIFTON, GA 31794  11490 | Loan Number 285002060<br>Date 10-05-2007<br>Maturity Date 10-05-2012<br>Loan Amount $ 404,903.00<br>Renewal Of 275002392 |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above, the PRINCIPAL sum of FOUR HUNDRED FOUR THOUSAND NINE HUNDRED THREE AND NO/100 _____ Dollars $ 404,903.00

☒ **Single Advance:** I will receive all of this principal sum on 10-26-2007 _____ . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ .

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 10-26-2007 _____ at the rate of 8.750 % per year until 10-05-2012 _____ .

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____

A change in the interest rate will take effect _____

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____ .

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

☐ The amount of each scheduled payment will change. ☐ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than 10 _____ days after it is due, I agree to pay a late charge of 5.000% OF THE LATE AMOUNT WITH A MAX OF $100.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above. LOAN FEES, INTANGIBLE TAX AFFIDAVIT

**PAYMENTS:** I agree to pay this note as follows:

ON DEMAND, BUT IF NO DEMAND IS MADE THEN 4 ANNUAL PAYMENTS OF $62,673.64 BEGINNING 10-05-2008 AND 1 BALLOON PAYMENT OF $305,182.46 ON 10-05-2012.

☐ If checked, and this loan is secured by a first lien on real estate, then any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of lenders demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:** THIS NOTE IS SECURED BY 1ST MORTGAGE ON REAL ESTATE, BEING 292.18 ACRES, MORE OR LESS, LOCATED IN LAND LOT 261 IN THE 7TH LAND DISTRICT OF WORTH COUNTY, GEORGIA, AS REFERENCED BY DSD DATED 08-11-2006; GUARANTY OF THE ESTATE OF E.M. FLOWERS, JR,GUARANTY OF DIXIE FARMS, INC., AND PERSONAL GUARANTY OF WILLIAM R. FLOWERS AND EUGENE M. FLOWERS,III.

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date): DSD DATED 8-11-2006<br><br>(This section is for your internal use. Failure to list a separate security document does not mean this agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is AMORTIZE #275002392<br><br>**SIGNATURES AND SEALS:** IN WITNESS WHEREOF, I HAVE SIGNED MY NAME AND AFFIXED MY SEAL ON THIS 5TH DAY OF OCTOBER, 2007 . BY DOING SO, I AGREE TO THE TERMS OF THIS NOTE INCLUDING THOSE ON PAGE 2). I HAVE RECEIVED A COPY ON TODAY'S DATE.<br>FLOWERS BROTHERS PRODUCE COMPANY LLC |

Signature for Lender

_____
HURST, CLINT, CLINT HURST, CITY PRESIDENT

_____
WILLIAM R. FLOWERS, MANAGING MEMBER (Seal)

_____
EUGENE M. FLOWERS III, MANAGING MEMBER (Seal)

_____ (Seal)

_____ (Seal)

UNIVERSAL NOTE
Experts ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 3/4/2002

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Georgia will govern this note. Any term of this note which is contrary to applicable law will be ineffective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 3 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe them through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay attorney's fees of 15 percent of the principal and interest then owed, plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor); or
(4) give me notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure a commercial transaction.

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (If collateral, you are entitled to only one payment in full.) I agree that you may at your option extend this note to the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note, I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experts ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 2/4/2003

| | | |
|---|---|---|
| FLOWERS BROTHERS PRODUCE COMPANY LLC<br>P.O. BOX 210<br>TY TY, GA 31795<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | COLONY BANK OF TIFT AN OFFICE OF<br>COLONY BANK OF WORTH<br>605 WEST 2ND STREET<br>P O BOX 2459<br>TIFTON, GA 31794<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number 285002060<br>Date 10-05-2007<br>Mat. Date 10-05-2012<br>Loan Amount $ 404,903.00<br>Renewal Of 275002392 |

## DISBURSEMENT AUTHORIZATION

I hereby authorize and request the following disbursement from the loan referenced above:

| | | | | | |
|---|---|---|---|---|---|
| a. Amount given to me directly | $ 0.00 | o. | | $ | |
| b. Amount paid on my account (# 285002060 ) | $ | p. | | $ | |
| c. To Lender | $ 150.00 | q. | | $ | |
| Amounts paid to others on my behalf: | | r. | | $ | |
| d. Insurance Companies | $ | s. | | $ | |
| e. Public Officials | $ 1,225.00 | t. | | $ | |
| f. PAYOFF LOAN #275002392 | $ 403,528.00 | u. | | $ | |
| g. | $ | v. | | $ | |
| h. | $ | w. | | $ | |
| i. | $ | x. | | $ | |
| j. | $ | y. | | $ | |
| k. | $ | z. | | $ | |
| l. | $ | aa. | | $ | |
| m. | $ | bb. | | $ | |
| n. | $ | cc. | | $ | |

Comments:

FLOWERS BROTHERS PRODUCE COMPANY LLC

x _____
WILLIAM R. FLOWERS, MANAGING MEMBER

x _____

x _____

Loan Officer: HURST, CLINT

x _____
EUGENE M. FLOWERS III, MANAGING MEMBER

x _____

Experts. © 1995 Bankers Systems, Inc., St. Cloud, MN Form DA 8/30/2000



**EXHIBIT**

**"3"**

| GUARANTOR NAME AND ADDRESS | LENDER NAME AND ADDRESS | |
|---|---|---|
| DIXIE FARMS<br>158 WILLIAM GIBBS ROAD<br>TIFTON, GA 31793 | COLONY BANK OF TIFT AN OFFICE OF<br>COLONY BANK OF WORTH<br>605 WEST 2ND STREET<br>P O BOX 2459<br>TIFTON, GA 31794 | Number 285002060<br><br>Amount _____<br><br>Date OCTOBER 05, 2007 |

## GUARANTY

**DATE.** The date of this Guaranty is **10-05-2007** .

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce Lender (with its participants, successors and assigns), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of **FLOWERS BROTHERS PRODUCE COMPANY LLC**

_____ (Borrower) or to engage in any other transactions with Borrower, the Guarantor hereby absolutely and unconditionally guarantees to the Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

**INDEBTEDNESS.**

☐ **Specific Debts.** The Guarantor guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____

_____ and any extensions, renewals or replacements thereof (Indebtedness).

☒ **All Debts.** Except as this Guaranty may otherwise provide, the Guarantor guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations (Indebtedness)). Without limitation, this Guaranty includes the following described debt(s):

**COLONY #285002060**

Exclusions.

☐ Guarantor will be liable for $_____ of the principal amount of the Indebtedness outstanding at default and for all of the accrued interest, and the expenses of collection, enforcement or protection of Lender's rights and remedies under this Guaranty, including reasonable attorneys' fees.

☐ Guarantor's liability will not exceed _____ % of the Indebtedness outstanding at default and all of the accrued interest, and the expenses of collection, enforcement or protection of Lender's rights and remedies under this Guaranty, including reasonable attorneys' fees.

☐ Indebtedness Excludes:

**SECURITY.**

☐ the Guaranty is unsecured.

☒ secured by **DSD DATED 9-11-2006 SECURING 292.16 ACRES MORE OR LESS IN LL281, 7TH LAND DISTRICT OF WORTH COUNTY, GEORGIA**

☐ **CONFESSION OF JUDGMENT.** If Guarantor defaults, it authorizes any attorney to appear in a court of record and confess judgment against it in favor of Lender. The confession of judgment may be without process and for any amount due on this Guaranty including collection costs and reasonable attorneys' fees.

**PA only ☐ WARRANT OF AUTHORITY TO CONFESS JUDGMENT.** Upon default, in addition to all other remedies and rights available to Lender, by signing below Guarantor irrevocably authorizes the prothonotary, clerk, or any attorney to appear in any court of record having jurisdiction over this matter and to confess judgment against Guarantor at any time without stay of execution. Guarantor waives notice, service of process and process. Guarantor agrees and understands that judgment may be confessed against Guarantor for any unpaid principal, accrued interest and accrued charges due on this Note, plus collection costs and reasonable attorneys' fees up to 15 percent of the judgment. The exercise of the power to confess judgment will not exhaust this warrant of authority to confess judgment and may be done as often as Lender elects. Guarantor further understands that Guarantor's property may be seized without prior notice to satisfy the debt owed. Guarantor knowingly, intentionally, and voluntarily waives any and all constitutional rights Guarantor has to pre-deprivation notice and hearing under federal and state laws and fully understands the consequences of this waiver.

By signing immediately below, Guarantor agrees to the terms of the **WARRANT OF AUTHORITY TO CONFESS JUDGMENT** section.

**SIGNATURES.** By signing under seal, Guarantor agrees to the terms contained in this Guaranty (including those on page 2), Guarantor also acknowledges receipt of a copy of this Guaranty.

**GUARANTOR:**

**DIXIE FARMS**
Entity Name

_____ (Seal)
Name, Title **WILLIAM R. FLOWERS, PRESIDENT**

_____ (Seal)
Name, Title **SUE G. FLOWERS, SECRETARY**

© 2001 Wolters Kluwer Financial Services - Bankers Systems™ Form M-250 8/29/2006

# ADDITIONAL PROVISIONS

The Guarantor further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Guarantor hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Guarantor or modify, reduce, limit or release the liability of the Guarantor hereunder.

**2.** This is an absolute, unconditional and continuing Guaranty of payment of the Indebtedness and will continue to be enforceable against the Guarantor, whether or not all Indebtedness is paid in full, until this Guaranty is revoked by written notice actually received by the Lender. Any revocation shall not be effective as to any Indebtedness existing or committed to at the time of actual receipt of notice by the Lender, or as to any renewals, extensions and refinancings thereof.

The Guarantor represents and warrants to the Lender that the Guarantor has a direct and substantial economic interest in Borrower and expects to derive substantial benefits therefrom and from any loans and financial accommodations resulting from the creation of Indebtedness guaranteed hereby, and that this Guaranty is given for a business purpose. The Guarantor agrees to rely exclusively on its right to revoke this Guaranty prospectively as to future transactions by written notice actually received by Lender if at any time the benefits then being received by the Guarantor in connection with this Guaranty are not sufficient to warrant its continuance as a Guarantor as to future Indebtedness. Accordingly, the Lender may rely conclusively on a continuing warranty, hereby made, that the Guarantor continues to be benefited by this Guaranty and that the Lender has no duty to inquire into or confirm the receipt of any benefits, and that this Guaranty will be enforceable without regard to the receipt, nature or value of any such benefits.

**3.** If the Guarantor is dissolved or becomes insolvent, however defined, or revokes this Guaranty, then the Lender has the right to declare the full amount of all Indebtedness immediately due and payable, and the Guarantor will forthwith pay the Lender. If the Guarantor voluntarily commences or there is commenced involuntarily against the Guarantor a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, will become immediately due and payable without demand or notice thereof.

**4.** The Guarantor will be liable for all Indebtedness, without any limitation as to amount, plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Guarantor hereunder. The Lender may apply any sums received by or available to the Lender on account of the Indebtedness from Borrower or any other person (except the Guarantor), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts will not reduce, affect or impair the liability of the Guarantor hereunder. If the liability of the Guarantor is limited pursuant to this paragraph 4, any payment made by the Guarantor under this Guaranty will be effective to reduce or discharge its liability only if accompanied by a written transmittal document, received by the Lender, advising that such payment is made under this Guaranty for that purpose.

**5.** The Guarantor will pay or reimburse the Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by the Lender in connection with the protection, defense or enforcement of this Guaranty in any litigation or bankruptcy or insolvency proceedings.

**6.** Whether or not any existing relationship between the Guarantor and Borrower has been changed or ended and whether or not this Guaranty has been revoked, the Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Guarantor and without any notice to the Guarantor. The liability of the Guarantor will not be affected or impaired by any of the following acts or things (which the Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this Guaranty, without notice to or approval by the Guarantor): (i) any acceptance of collateral security, Guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other Guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

**7.** The Guarantor waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Lender any defense of waiver, release, estoppel, statute of limitations, res judicata,

statute of frauds, fraud, forgery, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against the Lender to Borrower or any such other person, whether or not on account of a related transaction. The Guarantor expressly agrees that the Guarantor will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Guarantor shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though Borrower's obligations had not been discharged.

**8.** The Guarantor further agrees that Guarantor will be obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not accrue to Indebtedness due to Borrower's discharge, and Guarantor will be obligated to pay such amounts as fully as if Borrower's obligations had not been discharged.

**9.** If any payment applied by the Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied will for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty will be enforceable as to such Indebtedness as fully as if such application had never been made.

**10.** Until the obligations of the Borrower to Lender have been paid in full, the Guarantor waive(s) any claim, remedy or other right which the Guarantor may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Guarantor's obligation under this Guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration or any right to participate in any claim or remedy the Guarantor may have against the Borrower, collateral, or other party obligated for Borrower's debt, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**11.** The Guarantor waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. The Lender will not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this Guaranty.

**12.** The liability of the Guarantor under this Guaranty is in addition to and is cumulative with all other liabilities of the Guarantor to the Lender as Guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

**13.** To induce Lender to enter into the Loan, Guarantor makes these representations and warranties for as long as Guaranty is in effect. Guarantor is duly organized, validly existing and in good standing under the laws in the jurisdiction where Guarantor was organized and is duly qualified, validly existing and in good standing in all jurisdictions in which Guarantor operates or Guarantor owns or leases property. Guarantor has the power and authority to enter into this transaction and to carry on Guarantor's business or activity as now conducted. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within Guarantor's duly authorized powers; have received all necessary governmental approval; will not violate any provision of law or order of court or governmental agency; and will not violate any agreement to which Guarantor is a party or to which Guarantor is or any of Guarantor's property is subject. Other than previously disclosed in writing to Lender, Guarantor has not changed Guarantor's name or principal place of business within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Guarantor does not and will not use any other name and will preserve Guarantor's existing name, trade names and franchises. Guarantor owns or leases all property that Guarantor needs to conduct Guarantor's business and activities. All of Guarantor's property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those Lender previously agreed to in writing. Guarantor is not violating any laws, regulations, rules, orders, judgments or decrees applicable to Guarantor or Guarantor's property, except for those that Guarantor is challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should Guarantor lose.

**14.** This Guaranty is effective upon delivery to the Lender, without further act, condition or acceptance by the Lender. It will be binding upon the Guarantor and the successors and assigns of the Guarantor and will inure to the benefit of the Lender and its participants, successors and assigns. If there be more than one Guarantor, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully binding upon and enforceable against either, any or all the Guarantors. Any invalidity or unenforceability of any provision or application of this Guaranty will not affect other lawful provisions and application hereof, and to this end the provisions of this Guaranty are declared to be severable. Except as allowed by the terms herein, this Guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Guarantor and the Lender. This Guaranty shall be governed by the laws of the State in which it is executed. The Guarantor waives notice of the Lender's acceptance hereof.

©2001 Wolters Kluwer Financial Services - Bankers Systems™ Form M-250 8/22/2006



# EXHIBIT

**"4"**

---

| | | |
|---|---|---|
| **FLOWERS BROTHERS PRODUCE COMPANY, LLC** <br> P.O. BOX 210 <br> TY TY, GA 31795 | **COLONY BANK OF TIFT AN OFFICE OF COLONY BANK OF WORTH** <br> 605 WEST 2ND STREET <br> P O BOX 2459 <br> TIFTON, GA 31794    114390 | Loan Number 285002215 <br> Date 03-26-2008 <br> Maturity Date 07-05-2008 <br> Loan Amount $ 285,000.00 <br> Renewal Of |
| **BORROWER'S NAME AND ADDRESS** <br> "I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS** <br> "You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of TWO HUNDRED EIGHTY FIVE THOUSAND AND NO/100 _____ Dollars $ 285,000.00

☒ **Single Advance:** I will receive all of this principal sum on 03-26-2008 . No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.

**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum _____ one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from 03-26- _____ at the rate of 6.000 % per year until 07-05-2008 .

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____ A change in the interest rate will take effect _____.

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than _____ %. The rate may not change more than _____ % each _____.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.    ☐ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☐ at a rate equal to _____.

☒ **LATE CHARGE:** If a payment is made more than 10 days after it is due, I agree to pay a late charge of 5.000% OF THE LATE AMOUNT WITH A MAX OF $100.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are ☐ are not included in the principal amount above: LOAN FEE/DSD MODIFICATION

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 1 PAYMENT OF $289,797.50 ON 07-05-2008.

☐ If checked, and this loan is secured by a first lien on real estate, then any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of lenders demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:** THIS NOTE IS SECURED BY 1ST MORTGAGE ON REAL ESTATE, BEING 292.18 ACRES, MORE OR LESS, LOCATED IN LAND LOT 261 IN THE 7TH LAND DISTRICT OF WORTH COUNTY, GEORGIA, AS REFERENCED BY DSD DATED 09-11-2006; GUARANTY OF THE ESTATE OF E.M. FLOWERS, JR, GUARANTY OF DIXIE FARMS, INC., AND PERSONAL GUARANTY OF WILLIAM R. FLOWERS AND EUGENE M. FLOWERS, III.

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date) DSD DATED 9-11-06 & DSD MOD DATED 3/26/08. <br> (This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is OPERATING EXPENSES <br><br> **SIGNATURES AND SEALS: IN WITNESS WHEREOF, I HAVE SIGNED MY NAME AND AFFIXED MY SEAL ON THIS** 26TH **DAY OF** MARCH, 2008 **. BY DOING SO, I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I HAVE RECEIVED A COPY ON TODAY'S DATE.** <br> FLOWERS BROTHERS PRODUCE COMPANY, LLC |

Signature for Lender

_[signature]_         E.M. FLOWERS III, MANAGING MEMBER _____ (Seal)

**HURST, CLINT, CLINT HURST, CITY PRESIDENT**    _[signature]_
                       WILLIAM R. FLOWERS, MANAGING MEMBER _____ (Seal)

_____ (Seal)

_____ (Seal)

UNIVERSAL NOTE

Experts ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 3/4/2002          *(page 1 of 2)*

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" and "my" mean each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Georgia will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will vary only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from me" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement accounts.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay attorney's fees of 15 percent of the principal and interest then owed, plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor); or
(4) give me notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure a commercial transaction.

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |



(page 2 of 2)

ExpereSS ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 3/4/2002

| FLOWERS BROTHERS PRODUCE COMPANY, LLC P.O. BOX 210 TY TY, GA 31795 BORROWER'S NAME AND ADDRESS "I" includes each borrower above, jointly and severally. | COLONY BANK OF TIFT AN OFFICE OF COLONY BANK OF WORTH 605 WEST 2ND STREET P O BOX 2459 TIFTON, GA 31794 LENDER'S NAME AND ADDRESS "You" means the lender, its successors and assigns. | Loan Number 285002215 Date 03-26-2008 Mat. Date 07-05-2008 Loan Amount $ 285,000.00 Renewal Of _____ |
|---|---|---|

## DISBURSEMENT AUTHORIZATION

I hereby authorize and request the following disbursement from the loan referenced above:

| | | | | |
|---|---|---|---|---|
| a. Amount given to me directly | $ 283,988.00 | o. | | $ |
| b. Amount paid on my account (# 285002215 ) | $ | p. | | $ |
| c. To Lender | $ 1,000.00 | q. | | $ |
| Amounts paid to others on my behalf: | | r. | | $ |
| d. Insurance Companies | $ | s. | | $ |
| e. Public Officials | $ 12.00 | t. | | $ |
| f. | $ | u. | | $ |
| g. | $ | v. | | $ |
| h. | $ | w. | | $ |
| i. | $ | x. | | $ |
| j. | $ | y. | | $ |
| k. | $ | z. | | $ |
| l. | $ | aa. | | $ |
| m. | $ | bb. | | $ |
| n. | $ | cc. | | $ |

Comments:

FLOWERS BROTHERS PRODUCE COMPANY, LLC

X _____
E.M. FLOWERS III, MANAGING MEMBER

X _____

X _____

Loan Officer: HURST, CLINT

X _____
WILLIAM R. FLOWERS, MANAGING MEMBER

X _____

X _____

ExpereS © 1985 Bankers Systems, Inc., St. Cloud, MN Form DA 6/30/2000

| GUARANTOR NAME AND ADDRESS | LENDER NAME AND ADDRESS | |
|---|---|---|
| DIXIE FARMS, INC<br>PO BOX 210<br>TY TY, GA 31795 | COLONY BANK OF TIFT AN OFFICE OF<br>COLONY BANK OF WORTH<br>805 WEST 2ND STREET<br>P O BOX 2459<br>TIFTON, GA 31794 | Number 285002215<br><br>Amount _____<br><br>Date MARCH 26, 2008 |

## GUARANTY

**DATE.** The date of this Guaranty is 03-26-2008.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce Lender (with its participants, successors and assigns), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of FLOWERS BROTHERS PRODUCE COMPANY, LLC

_____ (Borrower) or to engage in any other transactions with Borrower, the Guarantor hereby absolutely and unconditionally guarantees to the Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

**INDEBTEDNESS.**

☐ **Specific Debts.** The Guarantor guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____

_____ and any extensions, renewals or replacements thereof (Indebtedness).

☒ **All Debts.** Except as this Guaranty may otherwise provide, the Guarantor guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be, direct or indirect, due to or become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations (Indebtedness)). Without limitation, this Guaranty includes the following described debt(s):

NOTE # 285002215 _____

**Exclusions.**

☐ Guarantor will be liable for $ _____ of the principal amount of the Indebtedness outstanding at default and for all of the accrued interest, and the expenses of collection, enforcement or protection of Lender's rights and remedies under this Guaranty, including reasonable attorneys' fees.

☐ Guarantor's liability will not exceed _____ % of the Indebtedness outstanding at default and all of the accrued interest, and the expenses of collection, enforcement or protection of Lender's rights and remedies under this Guaranty, including reasonable attorneys' fees.

☐ Indebtedness Excludes: _____

**SECURITY.**

☐ the Guaranty is unsecured.

☒ secured by DSD DATED 9-11-06 & DSD MOD DATED 3/26/08

☐ IL only ☐ **CONFESSION OF JUDGMENT.** If Guarantor defaults, it authorizes any attorney to appear in a court of record and confess judgment against it in favor of Lender. The confession of judgment may be without process and for any amount due on this Guaranty including collection costs and reasonable attorneys' fees.

PA only ☐ **WARRANT OF AUTHORITY TO CONFESS JUDGMENT.** Upon default, in addition to all other remedies and rights available to Lender, by signing below Guarantor irrevocably authorizes the prothonotary, clerk, or any attorney to appear in any court of record having jurisdiction over this matter and to confess judgment against Guarantor at any time without stay of execution. Guarantor waives notice, service of process and process. Guarantor agrees and understands that judgment may be confessed against Guarantor for any unpaid principal, accrued interest and accrued charges due on this Note, plus collection costs and reasonable attorneys' fees up to 15 percent of the judgment. The exercise of the power to confess judgment will not exhaust this warrant of authority to confess judgment and may be done as often as Lender elects. Guarantor further understands that Guarantor's property may be seized without prior notice to satisfy the debt owed. Guarantor knowingly, intentionally, and voluntarily waives any and all constitutional rights Guarantor has to pre-deprivation notice and hearing under federal and state laws and fully understands the consequences of this waiver.

By signing immediately below, Guarantor agrees to the terms of the WARRANT OF AUTHORITY TO CONFESS JUDGMENT section.

**SIGNATURES.** By signing under seal, Guarantor agrees to the terms contained in this Guaranty (including those on page 2). Guarantor also acknowledges receipt of a copy of this Guaranty.

**GUARANTOR:**

DIXIE FARMS, INC
Entity Name                              (Seal)

_Name, Title_ E.M. FLOWERS, III          (Seal)

_Name, Title_ WILLIAM R. FLOWERS         (Seal)

# ADDITIONAL PROVISIONS

The Guarantor further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Guarantor hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Guarantor or modify, reduce, limit or release the liability of the Guarantor hereunder.

**2.** This is an absolute, unconditional and continuing Guaranty of payment of the Indebtedness and will continue to be enforceable against the Guarantor, whether or not all Indebtedness is paid in full, until this Guaranty is revoked by written notice actually received by the Lender. Any revocation shall not be effective as to any Indebtedness existing or committed to at the time of actual receipt of notice by the Lender, or as to any renewals, extensions and refinancings thereof.

The Guarantor represents and warrants to the Lender that the Guarantor has a direct and substantial economic interest in Borrower and expects to derive substantial benefits therefrom and from any loans and financial accommodations resulting from the creation of Indebtedness guaranteed hereby, and that this Guaranty is given for a business purpose. The Guarantor agrees to rely exclusively on its right to revoke this Guaranty prospectively as to future transactions by written notice actually received by Lender if at any time the benefits then being received by the Guarantor in connection with this Guaranty are not sufficient to warrant its continuance as a Guarantor as to future Indebtedness. Accordingly, the Lender may rely conclusively on a continuing warranty, hereby made, that the Guarantor continues to be benefited by this Guaranty and that the Lender has no duty to inquire into or confirm the receipt of any benefits, and that this Guaranty will be enforceable without regard to the receipt, nature or value of any such benefits.

**3.** If the Guarantor is dissolved or becomes insolvent, however defined, or revokes this Guaranty, then the Lender has the right to declare the full amount of all Indebtedness immediately due and payable, and the Guarantor will forthwith pay the Lender. If the Guarantor voluntarily commences or there is commenced involuntarily against the Guarantor a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, will become immediately due and payable without demand or notice thereof.

**4.** The Guarantor will be liable for all Indebtedness, without any limitation as to amount, plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Guarantor hereunder. The Lender may apply any sums received by or available to the Lender on account of the Indebtedness from Borrower or any other person (except the Guarantor), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts will not reduce, affect or impair the liability of the Guarantor hereunder. If the liability of the Guarantor is limited pursuant to this paragraph 4, any payment made by the Guarantor under this Guaranty will be effective to reduce or discharge its liability only if accompanied by a written transmittal document, received by the Lender, advising that such payment is made under this Guaranty for that purpose.

**5.** The Guarantor will pay or reimburse the Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by the Lender in connection with the protection, defense or enforcement of this Guaranty in any litigation or bankruptcy or insolvency proceedings.

**6.** Whether or not any existing relationship between the Guarantor and Borrower has been changed or ended and whether or not this Guaranty has been revoked, the Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Guarantor and without any notice to the Guarantor. The liability of the Guarantor will not be affected or impaired by any of the following acts or things (which the Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this Guaranty, without notice to or approval by the Guarantor): (i) any acceptance of collateral security, Guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other Guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

**7.** The Guarantor waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Lender any defense of waiver, release, estoppel, statute of limitations, res judicata,

statute of frauds, fraud, forgery, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against the Lender to Borrower or any such other person, whether or not on account of a related transaction. The Guarantor expressly agrees that the Guarantor will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Guarantor shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though Borrower's obligations had not been discharged.

**8.** The Guarantor further agree(s) that Guarantor will be obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not accrue to Indebtedness due to Borrower's discharge, and Guarantor will be obligated to pay such amounts as fully as if Borrower's obligations had not been discharged.

**9.** If any payment applied by the Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied will for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty will be enforceable as to such Indebtedness as fully as if such application had never been made.

**10.** Until the obligations of the Borrower to Lender have been paid in full, the Guarantor waive(s) any claim, remedy or other right which the Guarantor may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Guarantor's obligation under this Guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration or any right to participate in any claim or remedy the Guarantor may have against the Borrower, collateral, or other party obligated for Borrower's debt, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**11.** The Guarantor waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. The Lender will not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this Guaranty.

**12.** The liability of the Guarantor under this Guaranty is in addition to and is cumulative with all other liabilities of the Guarantor to the Lender as Guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

**13.** To induce Lender to enter into the Loan, Guarantor makes these representations and warranties for as long as Guaranty is in effect. Guarantor is duly organized, validly existing and in good standing under the laws in the jurisdiction where Guarantor was organized and is duly qualified, validly existing and in good standing in all jurisdictions in which Guarantor operates or Guarantor owns or leases property. Guarantor has the power and authority to enter into this transaction and to carry on Guarantor's business or activity as now conducted. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within Guarantor's duly authorized powers; have received all necessary governmental approval; will not violate any provision of law or order of court or governmental agency; and will not violate any agreement to which Guarantor is a party or to which Guarantor is or any of Guarantor's property is subject. Other than previously disclosed in writing to Lender, Guarantor has not changed Guarantor's name or principal place of business within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Guarantor does not and will not use any other name and will preserve Guarantor's existing name, trade names and franchises. Guarantor owns or leases all property that Guarantor needs to conduct Guarantor's business and activities. All of Guarantor's property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those Lender previously agreed to in writing. Guarantor is not violating any laws, regulations, rules, orders, judgments or decrees applicable to Guarantor or Guarantor's property, except for those that Guarantor is challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should Guarantor lose.

**14.** This Guaranty is effective upon delivery to the Lender, without further act, condition or acceptance by the Lender. It will be binding upon the Guarantor and the successors and assigns of the Guarantor and will inure to the benefit of the Lender and its participants, successors and assigns. If there be more than one Guarantor, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully binding upon and enforceable against either, any or all the Guarantors. Any invalidity or unenforceability of any provision or application of this Guaranty will not affect other lawful provisions and application hereof, and to this end the provisions of this Guaranty are declared to be severable. Except as allowed by the terms herein, this Guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Guarantor and the Lender. This Guaranty shall be governed by the laws of the State in which it is executed. The Guarantor waives notice of the Lender's acceptance hereof.

© 2001 Wolters Kluwer Financial Services - Bankers Systems™ Form M-250 8/28/2008





## MODIFICATION OF PROMISSORY NOTE

THIS MODIFICATION is made as of this date – 08/13/08 – by and between the Borrower, **Flowers Brothers Produce Company, LLC**, and Colony Bank("Lender").

### STATEMENT OF FACTS

Borrower is indebted to Lender under that certain promissory note, Note #:285002215, dated 03/26/08, executed by Borrower in favor of Lender in the originally stated principal amount of **$285,000.00** (the "Note") and Borrower and Lender desire to modify the Note in certain respects in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises, the covenants and agreements contained herein and other good and valuable consideration, the receipt of which are hereby acknowledged, Borrower and Lender do hereby agree that all capitalized terms used herein shall have the meanings ascribed thereto in the Note (except as otherwise expressed, defined or limited therein) and do further agree as follows:

### STATEMENT OF TERMS

1. **Amendment(s) of Note.** Subject to the fulfillment of the conditions precedent to the effectiveness of this Modification which are set forth below, the Note shall be amended as follows:

   **The maturity date of the note is extended from 07/05/2008 to 10/05/08.**

2. **No other Amendments.** Except for the amendment(s) expressly set forth above in Section 1 above, the Note shall remain unchanged and in full force and effect. Nothing on this Modification is intended, or shall be construed, to constitute a novation or an accord or satisfaction of the Note or any indebtedness evidenced thereby or to modify, affect or impair the perfection of the continuity of Lender's security interests, security titles or other liens in, to or on any real or personal property collateral for this Note.

IN WITNESS WHEREOF, the parties hereto have caused this Modification to be duly executed and delivered as of the day and year specified at the beginning hereof.

**BORROWER:**                                    **LENDER:**

Signed:_____            Signed:_____

**Flowers Brothers Produce Company, LLC**

Signed:_____            Date: 08/13/08_____

E.M. Flowers III, Managing Member

Signed:_____

**William R. Flowers, Managing Member**

Signed:_____

Revised 5/23/2008

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | **CHAPTER 12 BANKRUPTCY** |
| | : | |
| **DIXIE FARMS, INC.,** | : | **CASE NO. 09-71040 - JTL** |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| **COLONY BANK,** | : | |
| | : | |
| Movant, | : | |
| | : | **CONTESTED MATTER** |
| vs. | : | |
| | : | |
| **DIXIE FARMS, INC. and** | : | |
| **WALTER KELLEY** | : | |
| | : | |
| Respondents. | : | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the following parties have been served a copy of the foregoing *Colony Bank of Worth's Motion for Relief from the Automatic Stay* and were furnished by electronic service through CM/ECF and/or by depositing a copy in the United States Mail with sufficient postage affixed thereon to assure delivery to the following persons:

| | | |
|---|---|---|
| Dixie Farms, Inc. | Mr. Wesley J. Boyer | Mr. Walter W. Kelly, Esq. |
| 159 William Gibbs Road | Katz Flatau & Boyer | Chapter 12 Trustee's Office |
| Tifton, Georgia 31793 | 335 Cotton Avenue | Post Office Box 70849 |
| | Macon, Georgia 31201 | Albany, Georgia 31708 |

This the 17th day of March, 2010.

MOORE, CLARKE, DuVALL & RODGERS, P.C.

By:   <u>s/ David A. Garland</u>
Georgia State Bar No.: 005680
Attorneys for Movant Colony Bank of Worth