| | | |
|---|---|---|
| FLOWERS BROTHERS PRODUCE COMPANY, LLC<br>229 W B PARKS RD<br>TY TY, GA 31795 | Tifton Banking Company<br>729 W Second Street<br>Tifton, GA 31794 | Loan Number __400267400__<br>Date __09/29/2008__<br>Maturity Date __04/10/2009__<br>Loan Amount $ __1,257,374.72__<br>Renewal Of _____ |
| BORROWER'S NAME AND ADDRESS<br>"I" includes each borrower above, jointly and severally. | LENDER'S NAME AND ADDRESS<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of __One Million Two Hundred__

__Fifty-Seven Thousand Three Hundred Seventy-Four Dollars and Seventy-Two__ Dollars $ __1,257,374.72__

☒ **Single Advance:** I will receive all of this principal sum on __09/29/2008__. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____

_____ I will receive the amount of $_____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __09/29/2008__ at the rate of __6.760__ %

per year until __Paid in Full__.

☐ **Variable Rate:** This rate may then change as stated below.

☐ **Index Rate:** The future rate will be _____ the following index rate: _____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☐ **Frequency and Timing:** The rate on this note may change as often as _____

A change in the interest rate will take effect _____

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than

_____ %. The rate may not change more than _____ % each _____.

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:

☐ The amount of each scheduled payment will change. ☐ The amount of the final payment will change.

☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a __Actual/360__ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:

☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☐ at a rate equal to _____

☒ **LATE CHARGE:** If a payment is made more than __10__ days after it is due, I agree to pay a late charge of __5.000% of the payment__ __amount with a minimum of $25.00 and a maximum of $150.00__.

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____.

**PAYMENTS:** I agree to pay this note as follows:

☐ **Interest:** I agree to pay accrued interest _____

☐ **Principal:** I agree to pay the principal _____

☒ **Installments:** I agree to pay this note in __6__ payments. The first payment will be in the amount of $ __11,100.00__ and will be due __11/10/2008__. A payment of $__11,100.00__ will be due __on the same day of each Month__ thereafter. The final payment of the entire unpaid balance of principal and interest will be due __April 10, 2009__.

☐ If checked, and this loan is secured by a first lien on real estate, then any accrued interest not paid when due (whether due by reason of a schedule of payments or due because of lenders demand) will become part of the principal thereafter, and will bear interest at the interest rate in effect from time to time as provided for in this agreement.

**ADDITIONAL TERMS:**

THIS NOTE IS SEPARATELY SECURED BY DSD TO RE DATED 09/11/2006 COVERING 173 +/- ACRES OF FARMLAND IN LAND LOTS 341 & 350 OF THE 6TH LAND DISTRICT IN THE NAME OF DIXIE FARMS, INC, ALSO KNOWN AS 159 WILLIAM GIBBS ROAD; TIFTON, GEORGIA; S/A DATED 09/11/2006 PLEDGING 173 +/- ACRES; S/A DATED 02/27/2008 COVERING COMMERCIAL EQUIPMENT; S/A DATED 12/18/2007 COVERING ONE 8" DEEP WELL, FIVE TOWER CENTER PIVOT AND IRRIGATION FIXTURES LOCATED IN LAND LOTS 341 & 350 OF THE 6TH LAND DISTRICT OF TIFT COUNTY, GEORGIA IN THE NAME OF DIXIE FARMS, INC.; PERSONAL GUARANTEES OF EUGENE M FLOWERS, III, WILLIAM R FLOWERS AND SUE G FLOWERS; CORPORATE GUARANTY OF DIXIE FARMS, INC.

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br>SEE COLLATERAL AS DESCRIBED IN ADDITIONAL TERMS ABOVE.<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is __COMMERCIAL REAL ESTATE__ __REFINANCE__<br>**SIGNATURES AND SEALS:** IN WITNESS WHEREOF, I HAVE SIGNED MY NAME AND AFFIXED MY SEAL ON THIS __29th__ DAY OF __September, 2008__. BY DOING SO, I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I HAVE RECEIVED A COPY ON TODAY'S DATE.<br>FLOWERS BROTHERS PRODUCE COMPANY, LLC |

Signature for Lender

_____ Leland Roberts

_____ EUGENE M FLOWERS, III   MANAGING MEMBER (Seal)

_____ WILLIAM R FLOWERS   MANAGING MEMBER (Seal)

_____ (Seal)

_____ (Seal)

UNIVERSAL NOTE

Experta ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-GA 3/4/2002

E & A

this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

APPLICABLE LAW: The law of the state of Georgia will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

COMMISSIONS OR OTHER REMUNERATION: I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

PAYMENTS: Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

INTEREST: Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. You and I may provide in this agreement for accrued interest not paid when due to be added to principal. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

INDEX RATE: The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

ACCRUAL METHOD: The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

POST MATURITY RATE: For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

SINGLE ADVANCE LOANS: If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below, or if we have agreed that accrued interest not paid when due may be added to principal.

MULTIPLE ADVANCE LOANS: If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

PAYMENTS BY LENDER: If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

SET-OFF: I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree

to hold you harmless from any such claims arising as a result of you exercise of your right of set-off.

REAL ESTATE OR RESIDENCE SECURITY: If this note is secured by rea estate or a residence that is personal property, the existence of a defaul and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

DEFAULT: I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

REMEDIES: If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay attorney's fees of 15 percent of the principal and interest then owed, plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and expenses you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

WAIVER: I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest);
(3) give notice that amounts due have not been paid (notice of dishonor); or
(4) give me notice prior to seizure of my personal property when you are seeking to foreclose a secured interest in any of my personal property used to secure a commercial transaction.

I waive any defenses I have based on suretyship or impairment of collateral.

OBLIGATIONS INDEPENDENT: I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without any notice to any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

FINANCIAL INFORMATION: I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

NOTICE: Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | | | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experian™ ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN. Form UN-GA 3/4/2002

Ex A



State of Georgia, Tift County
Superior Court Clerk's Office
Filed and Recorded in this
office the 13th
day of Sept, 20 06
Time 3:30 pm

Clerk of Superior Court

4943    VOL. 1297 PAGE 0172

Commercial and Industrial
Real Estate Loans

After Recording Return To:

REINHARDT, WHITLEY, WILMOT,
SUMMERLIN & PITTMAN, P.C.
P. O. Drawer 1287
Tifton, GA  31793

## DEED TO SECURE DEBT

**STATE OF GEORGIA**
**COUNTY OF TIFT**

THIS INDENTURE, made this 11 day of September, 2006, between DIXIE FARMS, INC. a Georgia Corporation of the State of Georgia and County of Tift, Grantor, and TIFTON BANKING COMPANY of the State of Georgia and County of Tift, Grantee, whose mailing address is 729 West Second Street, Tifton, Georgia 31794.

WITNESSETH: That, Whereas, Grantor is justly indebted to Grantee in the sum of _Four hundred Seventy - Six Thousand Two Hundred Ninty Six_ Dollars (s 476, 296.00 ), in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain note (the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on _March 10, 2007_, the Note, by reference, being made a part hereof.

NOW, Therefore, in consideration of the premises and of the sum hereinabove set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee the following property, to-wit:

14.5 acres in Land Lot No. 341 and 166.2 acres in Land Lot No. 350 in the 6th Land District of Tift County, Georgia, more particularly described as follows: Beginning at the southeast corner of Land Lot No. 341, thence run north 1 ½ ° west along the east line of said lot 765 feet to the center of the Old Excelsior Public Road; thence along the center of said public road as follows: South 35° west 838 feet, south 67° west 215 feet, south 77° west 1,400 feet to lands of G.D. Moorman, thence south 3° east 2,562 feet to lands of C. H. Jones, thence north 75° east 670 feet to the run of a branch in a pond; thence south 24° east along the run of said branch to the dam of said pond; thence following the run of said branch south 21° east 567 feet, south 30° east 462 feet, south 39° east 673 feet to the south line of said Land Lot No. 350; thence north 75 ½ ° east along said south lot line 396 feet to the southeast corner of said Lot 350; thence north 2 ½ ° west along the original line of said Lot No. 350, 4,685 feet to starting point; being Tract 3 as shown by plat of "Property of Omega Plant Farms, Inc.", made by J. M. Leverett under date of October 28, 1947, recorded in Plat Book 1, page 300.

Excepted herefrom is 1 acre, more or less, described in deed from Dreyfus Harris to Chesley R. Thompson and Erlene S. Thompson, dated February 27, 1968, recorded in Deed Book 108, page 165, in the office of the Clerk of the Superior Court of Tift County, Georgia.

Further excepted herefrom is 3.027 acres in Land Lots 341 and 350 in the 6th Land District of Tift County, Georgia, more particularly described in Warranty Deed from Dixie Farms, Inc. to E. M. Flowers, Jr., dated January 30, 1987, recorded in Deed Book 284, page 227, in the office of the Clerk of the Superior Court of Tift County, Georgia.

TOGETHER with all buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

TOGETHER with all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or under or above the same or any part or parcel thereof; and

TOGETHER with all and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; and

TOGETHER with all machinery, apparatus, equipment, fittings and fixtures, whether actually or constructively attached to said property and including all trade, domestic and ornamental fixtures, and articles of  personal property of every kind and nature whatsoever (hereinafter collectively called "equipment"), now or hereafter located in, upon or under said property or any part thereof and used or usable in connection with any present or future operation  of said property and now owned or hereafter acquired by Grantor including but without limiting the generality of the foregoing, all heating, air conditioning, freezing, lighting, laundry, incinerating and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers,  ranges, furnaces, oil burners or units thereof; appliances; air -cooling and air- conditioning apparatus; vacuuming cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; attached cabinets; partitions; ducts and compressors;  rugs and carpets; draperies; furniture and furnishings; together with all additions thereto and replacements thereof (grantor hereby agreeing with respect to all additions and replacements to execute and deliver from time to further instruments as may be requested by  grantee to confirm the conveyance, transfer and assignment of any of the  foregoing); and

TOGETHER with any and all rents which are  now due or may hereafter become due by reason of the renting, leasing and bailment of property improvements thereon and Equipment; and

TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the premises, to the extent of all

E+B

amounts which may be secured by this deed at t........te of receipt of any such award or payment by Gra......ad of the reasonable attorney's fees, costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

TO HAVE AND TO HOLD the said premises hereby granted (all of which are collectively referred to herein as the "Premises") to the use, benefit and behoof of the Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and that Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage; and is made and intended to secure the payment of the indebtedness of Grantor to Grantee evidenced by the Note in accordance with the terms thereof, together with any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, however incurred, including advances by the grantee or any transferee for the purposes of paying taxes or premiums on insurance on the premises or to repair, maintain or improve the premises (whether or not the grantor is at that time the owner of the premises) and all renewal or renewals, and extension or extensions and modification or modifications and consolidation or consolidations of the Note or other indebtedness, either in whole or in part (all of which are collectively referred to herein as the "Secured Indebtedness").

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note and this deed provided.

2. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed or made against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items. Upon notification from Grantee, Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the terms of the Note secured hereby, on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the day on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unpaid credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and shall become part of the Secured Indebtedness and bear interest at the rate of interest stated in the Note from date of advancement. Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it. In the event of the passage, after the date of this instrument, of any law or ordinance of the United States, the State or any political subdivision thereof, wherein the Premises are situated, or any decision by a court of competent jurisdiction, creating or providing for any tax, assessment or charge against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby, that is to be paid by Grantee, the Secured Indebtedness shall, at the option of Grantee, become immediately due and payable and, in the event payment thereof is not made forthwith, Grantee may take, or cause to be taken, such action or proceeding as may be taken hereunder in the case of any other default in the payment of the indebtedness.

3. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding 100% of full insurable value, and (unless waived by Grantee) rental or business interruption insurance against any abatement of rent resulting from fire or other casualty in an amount approved by Grantee; all insurance herein provided for shall be in form and companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than 10 days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by this deed, pursuant to the provisions of this Article.

4. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 7 herein. No part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, Equipment or other property, now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

5. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the premises, (b) consent to the cancellation or surrender of any lease of the premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this deed, or at any time within thirty (30) days after notice and demand, estopple letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), in proof of due service of copy of said assignment on each lessee, either personally or by pre-paid registered mail, return receipt requested..

6. Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments and renewals and substitution notes, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this deed and extensions or modifications thereof. Grantor, upon request, made either personally or by mail, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7. Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Grantor shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alteration, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon at the rate stated in the Note, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and 15% of the aggregate amount due, as attorney's fees, plus costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

8. Grantor shall deliver to Grantee, at any time within thirty (30) days after notice and demand by Grantee but not more frequently than once in every twelve (12) months period, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by the Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the

Ex B

conduct of any business on the premises, (b) the ~~tion~~ of the premises, or (c) the leasing of the premise~~s~~ any part thereof, for the last twelve (12) months calendar period prior to the giving of such notice , and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement.  **VOL. 1297 PAGE 0174**

9. Upon the occurrence of any one of the following events (herein called an "event of default"):

(a) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(b) should any warranty of Grantor herein contained, or contained in any instrument, transfer, conveyance, assignment or loan agreement given with respect to the Secured Indebtedness, prove untrue or misleading in any material aspect;

(c) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished except as provided for in Article 7 herein;

(d) should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(e) should any claim of priority to this deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(f) should Grantor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust be terminated or expire;

(g) should the Grantor make an assignment for the benefit of creditors, file or have filed against Grantor a Petition for Relief under any chapter of the Bankruptcy Code, or should any custodian, receiver, or trustee be appointed for it or any part of its assets, or any proceeding under any Bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, be commenced by or against Grantor;

(h) should Grantor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this deed, or in the Note, or in any of the following instruments given with respect to the secured indebtedness:  loan commitment of Grantee, construction loan agreement between Grantor and Grantee, or assignment of leases by Grantor; or

(i) should any event occur under any instrument, deed or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party;  then and there upon Grantee may do any one or more of the following:

(i) enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

(ii) pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any event of default other than payment of interest of principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest stated in the Note, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;

(iii) declare the entire Secured Indebtedness immediately due, payable and collectible, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable and collectible; and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks in a newspaper in which sheriff's advertisements are published in said county and giving such other notice required by law, and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns agent and attorney in fact to make such recitals, sale and conveyance, and all of the acts of such attorney in fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, courtesy and all other exceptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate stated in the Note per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorney's fees, and pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, a foreclosure or possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity.

Grantee, in any action to foreclose this deed, or upon any event of default, shall be at liberty to apply for the appointment of a receiver of the rents and profits or of the Premises or both without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration or the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness paid in full.

10. The Grantor hereby waives and renounces all homestead and exemption rights provided for by the Constitution and laws of the United States or the State of Georgia, in and to the Premises as against the collection of the secured indebtedness, or any part thereof; and Grantor agrees that where, by the terms of the conveyance or the note secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

11. If all or any part of the Premises is sold, conveyed or otherwise transferred without obtaining the prior written consent of Grantee, Grantee may declare the entire Secured Indebtedness immediately due and payable except as prohibited by law.  Grantee may, in its sole discretion, consent to such sale or transfer.  Should Grantee decide to consent to such sale or transfer it will be deemed to have waived its right to accelerate the Secured Indebtedness only if prior to such sale or transfer (a) Grantee determines that the credit of any purchaser or transferee is satisfactory; (b) the purchaser or transferee agrees to pay interest on the amount owed to Grantee under the Note and under this Deed to Secure Debt at whatever rate Grantee requires; (c) the purchaser or transferee executes an assumption agreement that is acceptable to Grantee and that obligates the purchaser or transferee to keep all of the promises and agreements made in the Note and in this Deed to Secure Debt whether according to their original terms or as amended pursuant to the assumption agreement; and (d) the purchaser or transferee pays the transfer fee required by Grantee.  The foregoing provisions will apply to each and every sale and transfer whether or not the Grantee has consented to any previous sale or transfer.

12. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against the Grantor, including an action of foreclosure, or any other action, for a default or defaults by Grantor existing at the time such earlier action was commenced.

13. The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others; and all of them are cumulative to the remedies for collection of indebtedness, enforcements of rights under security deeds, and preservation of security as provided at law.  No act of Grantee shall be construed as an election to proceed under any one  provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14. Every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by depositing it in any post office station or letter box, enclosed in a postpaid envelope (a) addressed to such person or persons, or their heirs or successors, at his, their or its address last known to Grantee or (b) addressed to the street address of the Premises hereby conveyed.

15. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto.  If more than one party shall execute this deed, the term 'Grantor' shall mean all parties signing, and each of them, and each agreement, obligation and secured indebtedness of the Grantor shall be and mean the several as well as joint undertaking of each of them.

E & B

IN WITNESS WHEREOF, this deed has been duly executed and sealed by Grantor the day and year above written.

DIXIE FARMS, INC.

by: _____ CEO

attest: Eugene M. Flowers III CFO

[SEAL]

Signed, sealed and delivered
on this 11 day of September
2006 in the presence of:

_____
Common Witness

_____
Notary Public

My Commission Expires: _____

VOL. 1297 PAGE 0175

*(notary seal: JENA WILSON / NOTARY PUBLIC / GEORGIA / EXPIRES JUNE 7, 2009)*

THE DEBT WHICH THIS ____ WAS GIVEN TO SECURE HAVING BEEN PAID IN FULL, THIS INSTRUMENT IS HEREBY CANCELLED AND THE CLERK OF THE SUPERIOR COURT OF _____ COUNTY, GEORGIA, IS HEREBY AUTHORIZED AND DIRECTED TO MARK IT SATISFIED OF RECORD.

THIS _____ day of _____, _____.

_____

_____

FOR VALUE RECEIVED THE UNDERSIGNED HEREBY TRANSFERS, ASSIGNS AND CONVEYS TO _____ THE INDEBTEDNESS (WITHOUT RECOURSE) SECURED BY THE FOREGOING DEED: THE PROPERTY DESCRIBED IN THE FOREGOING DEED: AND ALL RIGHTS, PRIVILEGES AND POWERS OF THE UNDERSIGNED IN OR UNDER SAID NOTE, PROPERTY, AND DEED.

WITNESS THE SEAL AND SIGNATURE OF THE UNDERSIGNED, THIS _____ DAY OF _____, _____.

_____(SEAL)

_____(SEAL)

Signed, sealed and delivered
on this ____ day of _____,
_____ in the presence of:

_____
Common Witness

_____
Notary Public
My Commission Expires: _____

H:\DATA\MSWORD\GRR\1556\0137\Tifton Banking DSD.doc\jb

E+B

When recorded return to: Tifton Banking Company
729 W Second Street
Tifton, GA 31794

**6357**   **VOL. 1391 PAGE 0314**

State of Georgia, Tift County
Superior Court Clerk's Office
Filed and Recorded in this
office this _27th_
day of _DEC_, 20_07_
Time: _2:13 pm_

IMAGED
Date: _01/03/08_
By: _Shayan_

_Gwen C. Pate_
State of Georgia
Clerk of Superior Court

——— Space Above This Line For Recording Data ———

# MODIFICATION OF DEED TO SECURE DEBT

**DATE AND PARTIES.** The date of this Real Estate Modification (Modification) is ___12/18/2007___.
The parties and their addresses are:

**GRANTOR:** DIXIE FARMS, INC
159 WILLIAM GIBBS ROAD
TIFTON, GA 31793

**GRANTEE:** Tifton Banking Company
("LENDER") 729 W Second Street

Tifton, GA. 31794

RECEIVED
TIFT COUNTY
CLERK'S OFFICE
2007 DEC 27 PM 2:13
GWEN C PATE
BY

**BACKGROUND.** Grantor and Lender entered into a Security Instrument dated _09/11/2006_ and
recorded on _09/13/2006_. The Security Instrument was recorded in the records of ___
_TIFT_ County, Georgia at _TIFT COUNTY CLERK'S OFFICE_
. The property is located in _TIFT_ County at
_PO BOX 86 TIFTON , GA 31793_.

Described as:

173 +/- ACRES OF FARMLAND LOCATED IN LAND LOT 341 & 350 OF THE 6TH LAND
DISTRICT, TIFT COUNTY, GEORGIA

E+C

**REAL ESTATE MODIFICATION-GEORGIA (NOT FOR FNMA, FHLMC, FHA OR VA USE)**
Expert © 2001 Bankers Systems, Inc., St. Cloud, MN Form MMOD-GA 1/14/2004

**MODIFICATION.** For value received, Grantor and Lender agree to modify the original Security Instrument. Grantor and Lender agree that this Modification continues the effectiveness of the original Security Instrument. The Security Instrument was given to secure the original debts and obligations (whether identified as Secured Debts, Sums Secured, or otherwise) that now have been modified. Together with this Modification, the Security Instrument now secures the following debts and all extensions, renewals, refinancings, modifications and replacements. *(Include items such as borrower's name, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

One note of even date in the principal amount of 805,032.00 with final payment due 06/10/2008

☐ **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by the Security Instrument at any one time will not exceed $____________ ☐ which is a $____________ ☐ increase ☐ decrease in the total principal amount secured. This limitation of amount does not include interest and other fees and charges validly made pursuant to the Security Instrument. Also, this limitation does not apply to advances made under the terms of the Security Instrument to protect Lender's security and to perform any of the covenants contained in the Security Instrument.

**WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by the Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the property. Grantor also warrants that such same property is unencumbered, except for encumbrances of record.

**CONTINUATION OF TERMS.** Except as specifically amended in this Modification, all terms of the Security Instrument remain in effect.

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Modification. Grantor also acknowledges receipt of a copy of the Modification.
IN WITNESS WHEREOF, Grantor has signed and sealed this Modification.

**GRANTOR:** DIXIE FARMS, INC

(Signature) EUGENE M FLOWERS, CFO — 12/18/2007 (Date) (Seal)

(Signature) SUE G FLOWERS, SECRETARY — 12/18/2007 (Date) (Seal)

(Signature) ________ (Date) (Seal)

(Signature) ________ (Date) (Seal)

(Signature) ________ (Date) (Seal)

(Signature) ________ (Date) (Seal)

Signed, sealed and delivered in the presence of:

(Unofficial Witness)

(Notary Public, ________ County, Georgia)

KAYCEE A. JONES NOTARY PUBLIC GEORGIA EXPIRES JUNE 06, 2008 TIFT COUNTY

Signed, sealed and delivered in the presence of:

(Unofficial Witness)

(Notary Public, ________ County, Georgia)

E+C

Expere® © 2001 Bankers Systems, Inc., St. Cloud, MN Form MMOD-GA 1/14/2004

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| DIXIE FARMS, INC<br>159 WILLIAM GIBBS ROAD<br>TIFTON, GA 31793<br><br>58-1023968 | Tifton Banking Company<br>729 W Second Street<br>Tifton, GA 31794<br><br>31-1834155 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is ___12/18/2007_____ .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☐ Debtor ☒ FLOWERS BROTHERS PRODUCE COMPANY, LLC
_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):
ONE 8" DEEP WELL BEARING SERIAL # 20048, ONE FIVE TOWER CENTER PIVOT SERIAL # 19805 AND IRRIGATION FIXTURES (DRIP-PIPE) LOCATED ON 173+/- ACRES OF FARMLAND LOCATED IN LAND LOT 341 & 350 OF THE 6TH LAND DISTRICT OF TIFT COUNTY, GEORGIA IN THE NAME OF DIXIE FARMS, INC.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| DIXIE FARMS, INC. | Tifton Banking Company |
| _signature_  12/18/2007 | _signature_ |
| EUGENE M FLOWERS<br>CFO | Leland Roberts |
| _signature_  12/18/2007 | |
| SUE G FLOWERS<br>SECRETARY | |

Expert © 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:
(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;
(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;
(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and
(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:
(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;
(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;
(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;
(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:
(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;
(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;
(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;
(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

Exʀɛʀɛʟ

© 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

(page 2 of 2)

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| DIXIE FARMS, INC<br>159 WILLIAM GIBBS ROAD<br>TIFTON, GA 31793<br><br>58-1023968 | Tifton Banking Company<br>729 W Second Street<br>Tifton, GA 31794<br><br>31-1834155 |

Type: ☐ individual ☐ partnership ☒ corporation ☐ _____
State of organization/registration (if applicable) _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is ___12/18/2007___ .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☐ Debtor ☒ FLOWERS BROTHERS PRODUCE COMPANY, LLC
_____ (Borrower) owes to Secured Party:
  ☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

  ☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:
  ☐ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.
  ☐ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.
  ☐ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.
  ☐ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.
  ☐ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.
  ☐ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.
  ☐ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.
  ☐ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.
  ☐ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.
  ☐ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.
  ☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):
  173+/- ACRES OF FARMLAND LOCATED IN LAND LOT 341 AND 350 OF THE 6TH LAND
  DISTRICT OF TIFT COUNTY, GEORGIA.

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☐ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| DIXIE FARMS, INC. | Tifton Banking Company |
| _(signature)_ 12/18/2007 | _(signature)_ |
| EUGENE M FLOWERS<br>CFO | Leland Roberts |
| _(signature)_ 2007 | |
| SUE G FLOWERS<br>SECRETARY | |

E+D

Experi ® 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001

5
ucn-2008-329
03-14-2008
1:00PM
Tift County
Gwen C. Pate
Cle

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Leland Roberts                    (229) 382-0300

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

Tifton Banking Company
729 W Second Street
Tifton, GA 31794

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| | 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | DIXIE FARMS, INC | | | |
| | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 159 WILLIAM GIBBS ROAD | TIFTON | GA | 31793 | |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| 58-1023968 | | | | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names   [X] NONE

| | 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | | | | |
| | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)   [ ] NONE

| | 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Tifton Banking Company | | | |
| | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 729 W Second Street | Tifton | GA | 31794 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

ONE 8" DEEP WELL BEARING SERIAL # 20048, A FIVE TOWER CENTER PIVOT BEARING
SERIAL # 19805 AND IRRIGATION FIXTURES (DRIP-PIPE) LOCATED ON 173+/- ACRES OF
FARMLAND IN LAND LOT 341 & 350 OF THE 6TH LAND DISTRICT OF TIFT COUNTY, GEORGIA
IN THE NAME OF DIXIE FARMS, INC. WHETHER ANY OF THE FOREGOING IS OWNED NOW OR
ACQUIRED LATER; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND SUBSTITUTIONS
RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KINDRELATING TO ANY OF THE
FOREGOING; ALL PROCEEDS RELATING TO ANY OF THE FOREGOING(INCLUDING INSURANCE,
GENERAL INTANGIBLES AND OTHER ACCOUNTS PROCEEDS).

E&D

**5. ALTERNATIVE DESIGNATION [if applicable]:** [ ] LESSEE/LESSOR [ ] CONSIGNEE/CONSIGNOR [ ] BAILEE/BAILOR [ ] SELLER/BUYER [ ] AG. LIEN [ ] NON-UCC FILING

**6.** [ ] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] [ ] All Debtors [ ] Debtor 1 [ ] Debtor 2

**8. OPTIONAL FILER REFERENCE DATA**

ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**VOL. 1392 PAGE 0125**

A. NAME & PHONE OF CONTACT AT FILER [optional]

Leland Roberts                           (229) 382-0300

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Tifton Banking Company
729 W Second Street
Tifton, GA 31794

State of Georgia, Tift County
Superior Court Clerk's Office
Filed and Recorded in this
office the

**31st**
**Dec 07**

Time: **2:59 pm**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: DIXIE FARMS, INC

OR

1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

1c. MAILING ADDRESS: 159 WILLIAM GIBBS ROAD | CITY: TIFTON | STATE: GA | POSTAL CODE: 31793 | COUNTRY

1d. TAX ID #: SSN OR EIN: 58-1023968 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names      [X] NONE

2a. ORGANIZATION'S NAME

OR

2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)      [ ] NONE

3a. ORGANIZATION'S NAME: Tifton Banking Company

OR

3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX

3c. MAILING ADDRESS: 729 W Second Street | CITY: Tifton | STATE: GA | POSTAL CODE: 31794 | COUNTRY: USA

4. This FINANCING STATEMENT covers the following collateral:

ONE 8" DEEP WELL BEARING SERIAL # 20048, A FIVE TOWER CENTER PIVOT BEARING SERIAL # 19805 AND IRRIGATION FIXTURES (DRIP-PIPE) LOCATED ON 173+/- ACRES OF FARMLAND IN LAND LOT 341 & 350 OF THE 6TH LAND DISTRICT OF TIFT COUNTY, GEORGIA IN THE NAME OF DIXIE FARMS, INC. WHETHER ANY OF THE FOREGOING IS OWNED NOW OR ACQUIRED LATER; ALL ACCESSIONS, ADDITIONS, REPLACEMENTS, AND SUBSTITUTIONS RELATING TO ANY OF THE FOREGOING; ALL RECORDS OF ANY KINDRELATING TO ANY OF THE FOREGOING; ALL PROCEEDS RELATING TO ANY OF THE FOREGOING (INCLUDING INSURANCE, GENERAL INTANGIBLES AND OTHER ACCOUNTS PROCEEDS).

2007 DEC 31 PM 2:59
GWENETT ...
RECEIVED TIFT COUNTY CLERK'S OFFICE

5. ALTERNATIVE DESIGNATION (if applicable): [ ] LESSEE/LESSOR  [ ] CONSIGNEE/CONSIGNOR  [ ] BAILEE/BAILOR  [ ] SELLER/BUYER  [ ] AG. LIEN  [ ] NON-UCC FILING

6. [X] This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable]   7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]   [ ] All Debtors  [ ] Debtor 1  [ ] Debtor 2

8. OPTIONAL FILER REFERENCE DATA

E+D

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Bankers Systems, Inc., St. Cloud, MN Form UCC1 ...